# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **KAREN SHELLEY,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00113 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
| **Commissioner of Social Security,** | ) | By:   Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Karen Shelley, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Shelley protectively filed her current applications[1] for DIB and SSI on or about August 5, 2002, alleging disability as of January 13, 2000, based on arthritis, osteoarthritis, thyroid problems, depression, anxiety, hypertension, temporal mandibular joint syndrome, bone spurs and Achilles tendonitis. (Record, ("R."), 65-67, 81, 230-32.) Shelley's claims were denied both initially and on reconsideration. (R. at 32-34, 37, 40-42, 234-36.) Shelley requested a hearing before an administrative law judge, ("ALJ"), (R. at 43.) The ALJ held a hearing on December 11, 2003, at which Shelley was represented by counsel. (R. at 240-90.)

By decision dated February 5, 2004, the ALJ denied Shelley's claims. (R. at 18-29.) The ALJ found that Shelley met the disability insured requirements of the Act

---

[1]Shelley previously filed applications for DIB and SSI on February 16, 2000, alleging disability as of January 13, 2000. (R. at 18.) These claims were denied initially, upon reconsideration and by decision dated March 30, 2001. (R. at 18.) She requested a review of that decision by the Appeals Council that was denied. (R. at 18.) Shelley then filed an appeal with this court. (R. at 18.) On August 29, 2003, this court rendered a decision affirming the Commissioner's decision denying benefits. (R. at 56-63.) Therefore, disability is being considered as of March 31, 2001, one day after the ALJ's March 30, 2001, decision. (R. at 18.)

for DIB purposes through the date of the decision. (R. at 28.) She further found that Shelley had not engaged in substantial gainful activity since her alleged onset of disability. (R. at 28.) The ALJ found that the medical evidence established that Shelley had severe impairments, namely morbid obesity, arthritis, degenerative joint disease, a depressive disorder and an anxiety disorder, but she found that Shelley did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23, 28.) The ALJ further found that Shelley's allegations regarding her limitations were not totally credible. (R. at 28.) The ALJ concluded that Shelley retained the residual functional capacity to perform a limited range of sedentary work.[2] (R. at 28.) Based on Shelley's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Shelley could perform, including those of an assembler, a bench worker and an order clerk. (R. at 29.) Therefore, the ALJ found that Shelley was not disabled as defined by the Act and was not eligible for benefits. (R. at 29.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued this decision, Shelley pursued her administrative appeals, (R. at 13), but the Appeals Council denied her request for review. (R. at 5-9, 10-12.) Shelley then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Shelley's motion for summary judgment filed March 14, 2005, and the Commissioner's motion for summary

---

[2]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a) (2005).

-3-

judgment filed May 17, 2005.

## *II. Facts*

Shelley was born in 1957, (R. at 66, 230, 247), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Shelley completed high school and has past relevant work experience as a laundry aide. (R. at 82, 87, 248.)

Vocational expert, James Williams, testified at Shelley's hearing. (R. at 281-86.) He was asked to assume an individual of Shelley's age, education and work experience, who had the residual functional capacity to perform sedentary work, who was limited to simple tasks, who could occasionally climb, balance, kneel, crouch, crawl and stoop and who would be required to work in an environment without close proximity or interaction with supervisors, co-workers and the public. (R. at 282.) Williams stated that there would be jobs available in significant numbers in the national economy that such an individual could perform, including jobs as an assembler, a bench worker and an order clerk. (R. at 283.)

In rendering his decision, the ALJ reviewed records from Dr. Yogesh Chand, M.D.; Dr. David G. Anderson, M.D.; Dr. Pablo Carpio, M.D.; Dr. David M. Harris, M.D.; William A. Brezinski, M.A., a licensed psychologist; Dr. Edward Hunter, M.D.; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Bluefield Regional Medical Center; and Tazewell Community Hospital. Shelley's attorney also submitted a medical report from Raleigh

-4-

General Hospital to the Appeals Council.[3]

On June 16, 1999, Shelley saw Dr. Yogesh Chand, M.D., for complaints of right ankle and foot pain. (R. at 186-87.) She weighed 298 pounds. (R. at 187.) Dr. Chand reported that Shelley's neck and upper extremities appeared normal. (R. at 187.) He reported that Shelley's lower back was moderately tender over the lumbosacral area. (R. at 187.) Range of motion of Shelley's lumbar spine was normal as well as straight leg raising tests. (R. at 187.) X-rays of Shelley's ankles showed multiple spur formation. (R. at 187.) On July 9, 1999, Shelley complained of left knee pain. (R. at 185.) X-rays of Shelley's knee showed moderate patella femoral degenerative joint disease. (R. at 185.) Dr. Chand diagnosed degenerative joint disease of the left knee. (R. at 185.)

On January 14, 2000, Shelley complained of low back pain and right heel pain. (R. at 182.) Straight leg raising tests were normal. (R. at 182.) Dr. Chand reported that Shelley's hips, knees, ankles and feet functioned normally except for her right foot. (R. at 182.) X-ray of Shelley's right foot showed spur formation. (R. at 182.) X-rays of Shelley's lumbar spine showed advanced moderate degenerative joint disease at the L5 level with mild degenerative joint disease at the other levels, as well as in the thoracolumbar area. (R. at 182.) Dr. Chand diagnosed degenerative joint disease at the L5 level and posterior Achilles tendon bursitis. (R. at 182.) Dr. Chand reported

---

[3] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9, 10-12), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

that Shelley was permanently unable to perform work in the medium[4] to heavy[5] categories or jobs that required prolonged standing, walking or more than occasional bending, stooping, crawling, squatting or being on uneven ground or around heights. (R. at 227.) In June 2000, Dr. Chand reported that Shelley's primary problem was her increased weight. (R. at 180.) He reported that Shelley needed to lose weight to take the pressure off of her back. (R. at 180.) In September 2001, Dr. Chand reported that Shelley had normal gait and that her straight leg raising tests were negative. (R. at 175.) Shelley weighed 340 pounds. (R. at 175.) Dr. Chand diagnosed advanced osteoarthritis. (R. at 174.) A CT scan of Shelley's lumbar spine performed on March 14, 2002, showed extensive L5-S1 degenerative changes with first degree degenerative spondylolisthesis and mild degenerative spinal stenosis at the L4-L5 level with no herniated nucleus pulposus. (R. at 103, 123-24.)

On November 15, 2001, Dr. David G. Anderson, M.D., saw Shelley for her complaints of low back pain. (R. at 188-90.) Shelley weighed 245 pounds.[6] (R. at 189.) Her gait was reported as normal and she had normal strength in all lower extremity muscle groups. (R. at 189.) Straight leg raising tests were negative. (R. at 189.) It was Dr. Anderson's impression that Shelley suffered from chronic back

---

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2005).

[5]Heavy work involves lifting items weighing no more than 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can do heavy work, she also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2005).

[6]There is no explanation in this record of what would appear to be an almost 100-pound weight loss in only two months.

discomfort consistent with discogenic and degenerative joint type symptoms. (R. at 189.) He recommended conservative treatment, which included weight management, physical therapy, medications and possibly some pain clinic modalities. (R. at 189.)

The record shows that Dr. Pablo Carpio, M.D., treated Shelley from November 2001 to September 2002 for a number of complaints, including sporadic complaints of back pain and depression and ear infections. (R. at 108-20, 204-06.) In May 2002, Shelley reported that she was unable to work due to lumbar pain. (R. at 113.) She further stated that workers' compensation declared her as being disabled, per Dr. Chand. (R. at 112-13.) Accordingly, Dr. Carpio indicated that Shelley was unable to work due to chronic back pain. (R. at 112.) On September 29, 2002, Shelley indicated that she was still depressed, but that medication helped her. (R. at 108.) In January 2003, Shelley reported that the prescribed medication helped her. (R. at 205.)

On January 4, 2002, Shelley presented to the emergency room at Bluefield Regional Medical Center for complaints of hypertension. (R. at 134-35.) Her blood pressure reading from her right arm was 150/110 and from her left arm was 140/100. (R. at 134.) She was diagnosed with borderline hypertension and sinusitis. (R. at 134.) On January 10, 2002, she presented to the emergency room for complaints of right earache and dizziness. (R. at 130-31.) She was diagnosed with bilateral serous otitis media. (R. at 130, 132-33.) On February 8, 2002, she complained of dizziness and an earache. (R. at 128-29.) She was diagnosed with bilateral serous otitis media. (R. at 128.) On October 3, 2002, an ultrasound of Shelley's kidneys was performed and was normal. (R. at 121-22.) On April 28, 2003, an x-ray of Shelley's lumbar spine showed advanced degenerative disc disease at the L5-S1 level associated with facet

arthropathy. (R. at 224.)

On March 8, 2002, Dr. David M. Harris, M.D., saw Shelley for complaints of right ear infection. (R. at 99.) Examination showed some wax in the ear, which was cleared. (R. at 99.) She had mild otitis externa and she was extremely tender around the temporal mandibular joint. (R. at 99.) Hearing tests were normal, and a CT scan of the mastoid was normal. (R. at 99-102.)

On February 4, 2003, Dr. Edward Hunter, M.D., saw Shelley for complaints of low back pain. (R. at 136-42.) Shelley also complained of bone spurs in her feet, temporal mandibular joint syndrome, frequent ear infections, bilateral knee pain, depression, anxiety and vertigo. (R. at 136.) Her blood pressure reading was 150/80 and she weighed 321 pounds. (R. at 138.) Examination of Shelley's back showed normal range of motion and no muscle spasm or tenderness, kyphosis or scoliosis. (R. at 138.) Straight leg raising tests were negative. (R. at 138.) Her grip strength and gait were normal. (R. at 138-39.) Mental status examination also was normal. (R. at 139.) Dr. Hunter diagnosed chronic low back pain without evidence of muscle impairment, hypertension, hyperlipidemia, hypothyroidism, vertigo, depression and anxiety. (R. at 139.) He reported that Shelley would probably have some problems with prolonged standing or walking and/or creeping, crawling, crouching, climbing, stooping or bending. (R. at 139-40.) He found no mental impairment in Shelley's capacity for understanding, memory, sustained concentration and persistence, social interaction or adaptation. (R. at 140.)

On March 5, 2003, Hugh Tenison, Ph.D., a state agency psychologist,

completed a Psychiatric Review Technique form, ("PRTF"), indicating that Shelley suffered from a nonsevere affective disorder. (R. at 143-57.) Tenison found that Shelley had no limitations on her ability to perform her activities of daily living, to maintain social functioning, to maintain concentration, persistence or pace or that she had experienced episodes of decompensation. (R. at 153.) This assessment was affirmed by Julie Jennings, Ph.D., another state agency psychologist. (R. at 143.)

On March 5, 2003, Dr. Richard M. Surrusco, M.D., a state agency physician, found that Shelley had the residual functional capacity to perform medium work. (R. at 158-65.) No postural, manipulative, visual, communicative or environmental restrictions were placed on Shelley's work-related abilities. (R. at 161-63.) This assessment was affirmed by Dr. F. Joseph Duckwall, M.D., on July 24, 2003. (R. at 165.)

On November 10, 2003, William A. Brezinski, M.A., a licensed psychologist, evaluated Shelley at the request of Shelley's attorney. (R. at 209-13.) Brezinski reported that Shelley's comments were dramatic and exaggerated. (R. at 211.) Her affect was expansive, while her mood reflected more anxiety and depression. (R. at 211.) Her thought processes were intact, and she was fully oriented. (R. at 211-12.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Shelley obtained a verbal IQ score of 92, a performance IQ score of 91 and a full-scale IQ score of 91. (R. at 216.) Brezinski diagnosed generalized anxiety disorder, mild to moderate and passive aggressive personality disorder with dependent traits. (R. at 213.)

-9-

He completed a mental assessment indicating that Shelley had slight limitations in her ability to carry out short, simple instructions, to understand and remember detailed instructions and to interact appropriately with co-workers. (R. at 219-20.) He found that Shelley was moderately limited in her ability to carry out detailed instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, to respond appropriately to work pressures and to respond appropriately to changes in a routine work setting. (R. at 219-20.) Brezinski also found that Shelley was seriously limited, but not precluded, in her ability to interact appropriately with supervisors. (R. at 220.)

On June 22, 2004, Shelley presented to Raleigh General Hospital for an MRI of the lumbar spine. (R. at 238-39.) The MRI showed that Shelley had a right herniated nucleus pulposus and disc degeneration at the L2-L3, L4-L5 and L5-S1 levels and osteoarthritis of the lumbar vertebral body lipping and morbid obesity. (R. at 238-39.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R.

§§ 404.1520(a), 416.920(a) (2005).

By decision dated February 5, 2004, the ALJ denied Shelley's claims. (R. at 18-29.) The ALJ found that the medical evidence established that Shelley had severe impairments, namely morbid obesity, arthritis, degenerative joint disease, a depressive disorder and an anxiety disorder, but she found that Shelley did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23, 28.) The ALJ concluded that Shelley retained the residual functional capacity to perform a limited range of sedentary work. (R. at 28.) Based on Shelley's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Shelley could perform, including those of an assembler, a bench worker and an order clerk. (R. at 29.) Therefore, the ALJ found that Shelley was not disabled as defined by the Act and was not eligible for benefits. (R. at 29.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

In her brief, Shelley argues that the Appeals Council decision is lacking an adequate explanation, thereby rendering the final decision of the Commissioner deficient.[7] (Plaintiff's Memorandum In Support Of Judgment On The Pleadings, ("Plaintiff's Brief"), at 5-6.) Shelley also argues that the ALJ erred by failing to properly evaluate the evidence. (Plaintiff's Brief at 7-8.) In particular, Shelley argues that the ALJ erred by failing to consider the report of Brezinski. (Plaintiff's Brief at

---

[7]Shelley argues that the substance of the MRI report submitted to the Appeals Council indicates that she suffers from a rotator cuff tear. (Plaintiff's Brief at 6.) Based on my review of this evidence, it appears that Shelley underwent an MRI of the lumbar spine. (R. at 238-39.) There is no indication in the report that Shelley suffers from a rotator cuff tear. (R. at 238-39.) Therefore, I will not address this argument.

-11-

7.) Shelley further argues that the ALJ erred by failing to give proper credit to her testimony. (Plaintiff's Brief at 9-10.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

The ALJ found that Shelley had the residual functional capacity to perform sedentary work with limited standing/walking of no more than four hours in an eight-hour workday and sitting about six hours in an eight-hour workday. (R. at 25.) The

ALJ also found that Shelley should avoid activities that would require more than occasional bending, kneeling, stooping, crouching, balancing, crawling, climbing or unprotected heights. (R. at 25.) The ALJ further found that Shelley's mental impairment caused her to have a moderate reduction in concentration, limiting her to simple tasks and that she should have little interaction with the public, co-workers and supervisors. (R. at 25.) In determining Shelley's residual functional capacity, the ALJ considered the opinion of Brezinski. (R. at 24.) Consistent with Brezinski's opinion, the ALJ determined that Shelley had severe mental impairments and included limitations for such impairments. (R. at 25.) The medical evidence shows that Dr. Chand reported that Shelley was unable to perform work in the medium to heavy categories or jobs that required prolonged standing, walking or more than occasional bending, stooping, crawling, squatting or being on uneven ground. (R. at 227.) Dr. Anderson recommended only conservative treatment for Shelley's back complaints. (R. at 189.) In February 2003, Dr. Hunter reported that Shelley's mental examination was normal. (R. at 139.) He reported that Shelley would have some problems with prolonged standing or walking and/or creeping, crawling, crouching, climbing, stooping or bending. (R. at 139-40.) Based on my review of the medical evidence, I find that substantial evidence exists to support the ALJ's finding with regard to Shelley's residual functional capacity.

Based on the above, I find that substantial evidence exists to support the ALJ's finding that Shelley had the residual functional capacity to perform sedentary work. This same evidence also supports the ALJ's finding that Shelley's subjective complaints were not entirely credible. Also, Shelley does not contest the ALJ's finding that other jobs were available which she could perform if her residual functional capacity was as found by the ALJ. Therefore, I find that substantial

evidence supports the ALJ's finding that Shelley was not disabled.

### IV. Conclusion

For the foregoing reasons, Shelley's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the Commissioner's decision to deny benefits will be affirmed.

An appropriate order will be entered.

DATED: This 16th day of August, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE